**In re MARCUS HOOK DEVELOPMENT PARK, INC., Debtor.**

**MARCUS HOOK DEVELOPMENT PARK, INC., Movant,**

v.

**T.A. TITLE INSURANCE COMPANY, Marcus Hook Business & Commerce Center, Ltd., Bell Savings Bank, Marcus Hook Corp., Respondents,**

**and**

**County of Delaware, Pennsylvania, Respondent.**

Bankruptcy No. 83–2614–BM.
Motion No. 90–3468M.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 14, 1992.

Robert G. Sable, Sable, Makoroff & Gusky, P.C., Pittsburgh, Pa., for debtor.

Eric A. Schaffer, Reed Smith Shaw & McClay, Pittsburgh, Pa., for T.A. Title Ins. Co.

Joy Flowers Conti, Kirkpatrick & Lockhart, Pittsburgh, Pa., for County of Delaware, Pa.

Gary M. Schildhorn, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for Committee of Unsecured Creditors.

James DelBello, Delaware County Tax Claim Bureau, Media, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

### I

### PROLEGOMENON

Debtor's request for a final decree was granted and the objection thereto of T.A. Title Insurance Company (hereinafter "T.A. Title") was overruled in a Memorandum Opinion and Order of Court issued on May 20, 1992. In addition, the court determined therein that a provision in the confirmed

plan of reorganization that Delaware County, Pennsylvania (hereinafter "County") shall retain its lien against debtor's property took precedence over an order confirming the sale of debtor's property "free and clear of all liens".

On June 1, 1992, T.A. Title filed a motion for reconsideration of the order issued on May 20, 1992.

T.A. Title now asks that the order be modified so as to assert that the order confirming the sale of debtor's property "free and clear of all liens" takes precedence over the provision in the plan of reorganization that County shall retain its lien against the property. According to T.A. Title, there is no evidence of record that County has a valid lien against the subject property. The determination that County has a valid lien, T.A. Title argues, was based in large measure on the *erroneous* finding in the Memorandum Opinion of May 20, 1992 that County had filed a proof of claim based on its lien. In the absence of a proof of claim, T.A. Title maintains, *County* bears the burden of establishing the existence and validity of its lien. T.A. Title contends that no evidence pertaining to these matters was offered at the hearing.

T.A. Title additionally asks that the portion of the order of May 20, 1992, granting a final decree be modified so as to permit any party in interest sixty (60) days in which to raise matters concerning the conduct of counsel to debtor and of counsel to the Committee of Unsecured Creditors (hereinafter "Committee") and for the court to retain jurisdiction over this case until the matters have been resolved.

County opposes the motion for reconsideration to the extent that T.A. Title seeks modification of the order of May 20, 1992 so as to give precedence to the order confirming sale of the subject property "free and clear of all liens" over contrary language in the plan of reorganization providing that County shall retain its lien. Although County concedes that it did not file a proof of claim in this case, it insists that the order of May 20, 1992 should not be modified as T.A. Title suggests.

According to County, evidence was presented at the hearing on debtor's motion for entry of a final decree and T.A. Title's objection thereto that County has a valid lien. The fact that a proof of claim based on its lien was not filed, County argues, does not affect the lien's validity. County maintains that filing of a proof of claim is not essential to preserve a lien. Also, County argues in the alternative that T.A. Title has judicially admitted that County has a valid lien and that T.A. Title is judicially estopped and equitably estopped from now denying that County has a valid lien.

Debtor opposes the additional request by T.A. Title that the order granting a final decree be modified so as to permit any interested party to raise within sixty (60) days matters pertaining to the conduct of counsel to debtor and of counsel to the Committee and objects to the court's retention of jurisdiction over this case until those matters have been resolved. According to debtor, there is no factual basis upon which the court could find that there was a concerted or calculated course of conduct entitling any affected party to relief.

Counsel to the committee has not responded to the motion by T.A. Title.

The motion by T.A. Title will be granted in part and denied in part. Its request that the order of May 20, 1992 be modified so as to assert that the order confirming sale of the subject property "free and clear of all liens" takes precedence over inconsistent language in the plan of reorganization indicating that County shall retain its lien will be denied. However, its request that the order of May 20, 1992 be modified so as to provide that any interested party shall have sixty (60) days in which to raise matters pertaining to the conduct of counsel to the debtor and counsel to the Committee will be granted. The court will *retain* jurisdiction over this case until any such matter that is raised has been adjudicated.

As has been noted, a Memorandum Opinion dealing with other matters was issued on May 20, 1992. Issues raised by the subsequent motion for reconsideration will be incorporated into that Memorandum

Opinion. Except for the incorporated changes, that Memorandum Opinion remains the same.

## II

## INTRODUCTION

This matter is before the court on remand from the United States Court of Appeals for the Third Circuit which determined that certain orders issued in this case were inconsistent.

On one hand, an order was issued on August 14, 1986 which approved the sale of realty free and clear of all liens. The court was advised by counsel to the moving party at the time of the sale that all affected parties had received proper notice of the sale. On the other hand, orders were entered on February 11, 1987 and March 26, 1987, which respectively approved debtor's disclosure statement and plan of reorganization. Both documents contained language indicating that the lien of County would remain attached to the realty and would be "dealt with" by the purchaser. The order scheduling the disclosure statement and later the plan of reorganization contained language directing the movant to serve all affected parties. In neither situation—i.e., the sale and the disclosure statement and plan hearing—was there compliance with the court's order. To the contrary, in each instance the parties most affected by the activity were curiously absent from the lengthy service list.

This court is mandated to reconcile these seemingly irreconcilable orders or, in the alternative, to determine which takes priority. In so doing, we are further directed to take testimony and to make findings of fact and conclusions of law. The Third Circuit has suggested that no draconian remedy is required.

Debtor-in-possession has represented that all funds in its possession have been distributed pursuant to the confirmed plan of liquidation and requests that a final decree be entered. T.A. Title now does not object to entry of a final decree. However, it requests that the proposed final decree be modified so as to affirm that the sale of debtor's real estate divested County's tax lien, notwithstanding language to the contrary contained in the confirmed plan of reorganization.

County opposes the request of T.A. Title and in turn asks that the final decree be modified so as to affirm the language in the plan of reorganization and to declare that the sale of the property did not divest its lien.

The final decree which will be entered shall be modified in accordance with the request of County.

## III

## FACTS

Debtor filed a voluntary chapter 11 petition on December 8, 1983. Its estate was comprised of real property located in Marcus Hook, Delaware County, Pennsylvania.

On February 15, 1984, an order was issued approving the employment of the law firm of Lampl, Sable & Makoroff as counsel to debtor. Another order was issued on April 27, 1984 approving the employment of the law firm of Adelman, Lavine, Krasny, Gold and Levin as counsel to the Committee.

On July 17, 1986, debtor filed a motion to sell a portion of its real property. Said motion contained the following language:

In order to convey good and marketable title to the subject property, it is necessary that all mortgages, judgments, liens and encumbrances against said property be divested including those mortgages, judgments, liens and encumbrances set forth on Exhibit "C" hereto. All mortgages, judgments, liens and encumbrances shall attach, to the extent of their validity and priority, to the proceeds generated by this sale.

County was not named as a respondent in the caption to the motion. Also, Exhibit C did not include any tax lien by County against the property. The motion to sell was not served upon County.

An order scheduling a hearing on the motion for August 14, 1986, was entered on July 22, 1986. The order directed debtor's

counsel to serve a copy of the order and the motion to sell "upon all parties against whom relief is sought". Counsel to debtor filed a Certificate of Service with the court on July 23, 1986. Attached to the Certificate was a lengthy list of the entities on whom the order and the motion had been served. County was *not* included on the list.

Curiously, County did, however, receive a document from debtor's counsel entitled "Notice of Sale", which contained a reference to the motion to sell and which specified the time and place of the sale. The document stated in its boilerplate that the "[t]erms and conditions announced at time and place of sale shall supersede any inconsistent provisions of this Notice or the Motion filed", but contained no indication that the proposed sale would divest all liens against the property.

Also, County subscribes to the Delaware County Times and the Delaware County Legal Journal. The sale was advertised in both publications. These notices stated that debtor had filed a motion to sell approximately thirty-five (35) acres of real property and that a hearing on the motion was to be held on August 14, 1986, in Pittsburgh, Pennsylvania. Again, both notices stated in boilerplate language that the terms and conditions announced at the sale would supersede any inconsistent provisions of the motion to sell or of the notice. Neither notice, however, indicated that the proposed sale would divest all liens against the property.

A hearing was held on the motion to sell on August 14, 1986. County neither filed an objection to the motion nor appeared at the hearing.

After a brief hearing on a motions day when over two (2) dozen other matters were heard and decided, an order was entered confirming the sale of the property to one Dennis Marchuk (or to his nominee) for $560,000.00. Counsel to debtor certified to the court at said hearing that appropriate proof of publication had been filed or would be filed shortly and that proper notice had been given to all interested parties. The court accepted counsel's assurance that there had been compliance with the rules relating to notice and publication. No changes in the terms and conditions were announced at sale.

The order issued at that time provided that the sale was free and clear of all mortgages, judgments, liens and encumbrances listed therein. County was not included on the list. Also, the order provided that all mortgages, judgments, liens and encumbrances attached, to the extent of their validity and priority, to the sale proceeds and that Equibank, holder of the first mortgage, was to be paid no less than $150,000.00 at the closing. County was not served with a copy of the order confirming the sale and did not appeal the order.

Prior to the closing, Marchuk assigned his rights to the property to Marcus Hook Business and Commerce Center, Ltd. ("MHBCC"), a corporation in which he was a principal. Also prior to the closing, counsel to the Committee asked County for information regarding the amounts owed on the property for county taxes. By letter dated November 3, 1986, County provided the requested information.

On November 21, 1986, three (3) days before the scheduled closing, debtor's counsel appeared at this chamber and submitted a motion and proposed order which requested that the settlement officer who would preside at the closing be authorized to release the settlement proceeds to an escrow agent. Counsel averred that Title Abstract Company of Pennsylvania required such a court order before it would agree to release the proceeds. The court refused to consider the matter *ex parte* and without notice to affected parties. The court directed the motion be filed with the Clerk of Court and advised that it would be heard as soon as possible. Counsel did not file this motion with the Clerk. As a consequence, this motion was never dealt with.

A final settlement of the sale of the property ("closing") was held on November 24, 1986. MHBCC was represented at the closing by Marchuk. T.A. Title was represented by Albert LaRue, its Vice–President and manager of its Media, Pennsylvania, office and by its legal counsel. Debtor and

the Committee were represented by their counsel. County did not attend the closing.

Debtor delivered a deed for the property to MHBCC at the closing. Subsequent to the closing, Bell Savings Bank ("Bell") provided acquisition and development funding to MHBCC in return for which Bell was granted a first mortgage on the property. The mortgage documents were executed on behalf of MHBCC by Marchuk.

Of the $560,000.00 paid by MHBCC at the closing, a total of $506,436.41 remained after various deductions had been made. Pursuant to the order of August 14, 1986, Equibank was paid $150,000.00 at the closing in satisfaction of its first mortgage on the property. A total of $356,436.41 thus was available to be turned over to an authorized escrow agent. This sum was sufficient at that time to satisfy in full the amounts due and owing to all other lienholders of record listed on Exhibit C which was appended to the motion to sell the property *as well as satisfy the lien of County.*

T.A. Title provided title insurance to MHBCC and to Bell. Prior to insuring the title, T.A. Title received a letter dated November 14, 1986, from debtor's counsel. Enclosed with the letter were:

(1) a copy of the Order of August 14, 1986 confirming the sale to Marchuk;

(2) a copy of the motion to sell the property and all exhibits attached thereto;

(3) a copy of the certificate of service of the motion to sell; and

(4) a partially executed copy of a proposed agreement between Equibank and various taxing bodies pertaining to payment of taxes owed on the property; said agreement was executed by most of the affected parties; said agreement was not executed by County.

Pursuant to its custom and practice, T.A. Title forwarded the letter and enclosed documents to its legal counsel for evaluation.

A closing of this nature usually takes approximately one (1) hour. This closing lasted approximately eight (8) hours.

As has been noted, the court refused to act on debtor's motion of November 21, 1986 which asked that the settlement officer be authorized to release the settlement proceeds to an authorized escrow agent. On January 12, 1987, debtor filed a motion to authorize Title Abstract Company of Pennsylvania, the settlement officer at the closing, to release the remaining sale proceeds to co-counsel to the Committee as escrow agent and to pay the Chichester School District $200,000.00 in unpaid school taxes. It was alleged in the motion that *MHBCC* had paid the taxes on the property which were owed to County.

Although the order scheduling the motion directed that all parties affected by the motion be served with the motion and order, neither County nor T.A. Title was served with the motion. The motion was granted on February 11, 1987, on a day when approximately three (3) dozen other matters were also heard.

Also on January 12, 1987, debtor and the Committee filed with the court a Disclosure Statement and a Joint Plan of Reorganization.

The Disclosure Statement revealed that County had a lien against the property in the amount of $125,000.00 and made the following representation:

The Debtor's real estate was sold under and subject to the continuing lien of the County of Delaware. *The County's taxes shall therefore be dealt with by the purchaser of the property* and the County shall not receive any dividend on account of its claim against the estate. (Emphasis added.)

The Plan of Reorganization contained similar language:

*The County of Delaware shall continue to hold a lien against the property after the sale of the real estate. This claim will therefore be dealt with by the purchaser.* The County of Delaware will not receive any dividend from the estate. (Emphasis added).

An order was entered on January 15, 1987 scheduling a hearing on the Disclosure Statement for February 11, 1987, and directing the proponent of the plan to serve

a copy of the order and the disclosure statement on all creditors. On January 16, 1987, counsel to debtor filed certificates of service of the order and of the disclosure statement. Although County was served with the order and the disclosure statement, the plan proponent curiously did not see fit to serve MHBCC and T.A. Title.

An order was entered approving debtor's disclosure statement after the hearing on February 11, 1987, wherein the court determined that said document contained sufficient information to enable a creditor to vote for or against the plan. A hearing on plan confirmation was scheduled for March 26, 1987. The order directed that the plan be served on all creditors and other parties-in-interest. On February 27, 1987, counsel to debtor filed a certificate of service of the plan, the disclosure statement, the order of February 11, 1987, and a plan ballot. County was served with these documents. Once again, MHBCC and T.A. Title were not served.

On February 17, 1987, debtor submitted a motion in which it sought to have its counsel appointed as disbursing agent. An order was issued the next day authorizing debtor's counsel to serve as disbursing agent of any funds distributed pursuant to a confirmed plan of reorganization.

The Joint Plan of Reorganization was confirmed by order of court after a hearing on March 26, 1987, on a day when eight (8) other unrelated matters were also heard. No objection to confirmation was raised. One hundred percent (100%) of the ballots returned voted in favor of the plan.

Two (2) other orders were also issued on March 26, 1987. One order directed counsel to the Committee to deliver all of the funds in its possession—i.e., $216,200.14 (sic)—to the disbursing agent—i.e., to debtor's counsel. The other order directed the disbursing agent to make distribution of these funds in accordance with the just-confirmed plan of reorganization.

Counsel to debtor received from estate assets a total of $23,047.00 in compensation for services rendered and a total of $1,447.20 in costs reimbursement. An order was issued on December 1, 1986 awarding counsel $4,561.00 in fees and $567.79 in costs reimbursement for the period of February 15, 1983 through June 30, 1985. Another order was issued on December 12, 1987 awarding counsel to debtor an additional $18,486.00 in fees and $879.41 in costs reimbursement for the period of July 1, 1985 through January 31, 1987.

Counsel to the Committee received a total of $16,149.00 in fees and a total of $501.31 in costs reimbursement. An order was issued on June 10, 1985 awarding counsel $5,079.00 in fees and $94.96 in costs reimbursement for the period of March 21, 1984 through February 16, 1985. A second order was issued on December 9, 1986 awarding co-counsel an additional $11,070.00 in fees and $406.35 in costs reimbursement for the period of February 26, 1985 through August 25, 1986.

No party objected to these awards. To the contrary, the court was given the distinct impression that the total disbursement to the creditors and the professionals was made pursuant to an amicable arrangement.

On May 7, 1990, debtor filed the motion for final decree which is presently at issue. Debtor alleged that it had fully executed the plan and had made distribution to creditors, including professionals entitled to compensation. Debtor requested that it be discharged from all debts and liabilities and that, except as provided in the plan, all rights and interests of creditors be terminated. Debtor had fully distributed all funds and had no other assets.

County was served with a copy of the motion and the order scheduling a hearing on the matter for June 20, 1990. It neither objected to the motion nor appeared at the hearing. Although MHBCC and T.A. Title again had not been served, they somehow learned of the proceeding and appeared at the hearing to object to the motion. They asked that a final decree not be issued and that the court issue an order directing debtor to pay County's lien. In the alternative, the movant requested the court to direct that T.A. Title be indemnified for any action taken against the property by County.

By this stage of the proceedings, debtor's realty had been sold and the proceeds had been distributed to a multitude of creditors. Debtor had no other assets nor did it have the ability to satisfy other obligations.

An order which overruled the objection of MHBCC and T.A. Title and which entered the final decree was issued after a hearing on June 20, 1990.

■ MHBCC and T.A. Title filed a timely appeal in the district court of the order of June 20, 1990. The order was affirmed by the district court on December 26, 1990, whereupon MHBCC and T.A. Title appealed to the United States Court of Appeals for the Third Circuit. County did not participate in either of these appeals.[1]

On August 19, 1991, the Court of Appeals reversed the district court and directed that the matter be remanded to this court for "development of a record through an evidentiary hearing, if necessary, and for findings of fact in connection with resolution of the present controversy". *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 268 (3d Cir.1991).

In accordance with the mandate issued by the Court of Appeals, this matter was remanded by the district court on September 17, 1991.

On December 4, 1991, T.A. Title filed an amended objection to debtor's motion for a final decree. T.A. Title now takes the position that debtor cannot, through its plan of reorganization, reimpose any lien which had been divested by the order of August 14, 1986 approving sale of the property free and clear of all liens. The relief sought by T.A. Title in its amended objection is significantly different from that sought in the original objection. T.A. Title now asks that the order granting a final decree be modified so as to affirm that the order of August 14, 1986 divested any lien County has against the property, notwithstanding language to the contrary in the

confirmed plan of reorganization. T.A. Title no longer is opposed to entry of a final decree and no longer asks that debtor be directed to pay County's lien.

A hearing was held on the matter in this court on December 11, 1991, at which time all interested parties were permitted to offer evidence. On the eve of trial, counsel to the Committee, Gary M. Schildhorn; Esq., telephoned this chamber and advised a secretary that he would not appear at this proceeding so as to offer an insight as to the facts surrounding this case. As the unsecured creditors had received a substantial distribution and as their counsel was very actively involved in this maze of events, the court allowed the record to show that said matter would go forward and the decision would bind counsel and his client.

## IV

### ANALYSIS

The Court of Appeals determined that this court had not addressed the merits of the objection to the motion for a final decree but instead had denied same based upon a lack of subject-matter jurisdiction, and because the relief requested was impractical at this late stage of the case. *In re Marcus Hook Development Park, Inc.*, 943 F.2d at 261.

In essence, this court had determined that the conflict related to two non-debtors and that the outcome therefore could not conceivably affect the estate being administered. Because all assets of the estate had been distributed to a multitude of creditors approximately three (3) years earlier, this court felt that disgorgement of said dividend consequently was impractical if not impossible.

The Court of Appeals held that these reasons for denying the relief requested were erroneous and that the district court erred in affirming this court's decision. *In*

---

1. Much is made by T.A. Title of the fact that County did not participate in either of these appeals. Its reliance upon this is inappropriate. County did not participate because it had no reason to suspect that its interest might be adversely affected by the outcome. The controversy, as it existed at that time, concerned whether *debtor* or *MHBCC* would satisfy County's lien. Its lien was to be satisfied in either event. Neither debtor not MHBCC took the position at that stage of the case that County's lien should not be satisfied by someone.

*re Marcus Hook Development Park, Inc.,* 943 F.2d at 268. The order of the district court was reversed with instructions that the matter be remanded to this court "for development of a record through an evidentiary hearing, if necessary, and for findings of fact in connection with its resolution of the present controversy". 943 F.2d at 268.

T.A. Title and County agree that the ultimate issue before the court at this time is which of these inconsistent orders is to be given effect. The parties agree that the following issues must be decided before this ultimate issue can be resolved, to-wit:

(1) Did County in fact have a valid lien against the property?

(2) If it did, was adequate notice given to County that the proposed sale would divest its lien?

(3) Was the ultimate purchaser of the property a *bona fide* purchaser?

These preliminary matters will be addressed *ad seriatim.* Their answers will lead to resolution of the ultimate issue.

### A) *Did County Have A Valid Lien Against The Property?*

T.A. Title maintains that the Court of Appeals has directed this court to determine whether County has a lien for its taxes and, if it does, how it shall be provided for. According to T.A. Title, there is no evidence that County has any lien at all. If it does, T.A. Title further argues, there is no evidence that the lien was created prepetition rather than post-petition and is therefore valid as opposed to void *ab initio.*

The contention that County has no lien at all and, if it does, that it is not valid is at best disingenuous. Neither T.A. Title's original nor its amended objection to debtor's motion for a final decree disputed the existence and validity of County's lien. Moreover, T.A. Title strenuously maintained in its appeal to the district court that County had a valid lien against the property. The existence and/or validity of County's lien was first raised by T.A. Title in response to a query by the court. Had the court not raised the matter, it is questionable whether the issue would have been

raised at all. A colloquy between counsel and the court is not a substitute for testimony from witnesses having first-hand knowledge of the subject. These matters were unequivocally placed in issue for the first time in T.A. Title's post-hearing brief, long after the record had been closed and County had any opportunity to respond with record evidence.

These contentions by T.A. Title are without merit and therefore must be rejected.

■ The evidence presented at hearing on December 11, 1991 establishes that County has a lien against the property. An officer of T.A. Title conceded that T.A. Title had conducted a lien search prior to the closing on November 24, 1986 and had discovered that County had a lien (or liens) against the property.

■ The denial that said lien is valid fares no better. Liens for city and county real property taxes that are created, not just perfected, postpetition violate the automatic stay and may be void *ab initio. In re Marcus Hook,* 943 F.2d at 270 (*citing Makoroff v. City of Lockport,* 916 F.2d 890, 994 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991)). Tax liens, however, that attach prepetition are valid in bankruptcy, *see Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 83 (3d Cir.1989), as are liens created prepetition but perfected postpetition. *Makoroff,* 916 F.2d at 892.

It was held, in *Maryland National Bank v. Mayor of Baltimore,* 723 F.2d 1138, 1142–43 (4th Cir.1983), that "imposition of a property tax by the State of Maryland pursuant to its taxing statutes was the last step required to perfect the State's long-standing interest in real property located in its jurisdiction". The court, in so holding, applied Maryland law.

The Third Circuit first declined in *Equibank* to adopt the position of the Fourth Circuit that a state has an ever-present interest in real property which it can perfect postpetition under 11 U.S.C. § 546(b). *Equibank,* 884 F.2d at 85–86. It also declined to adopt said position in *Makoroff,* where it held that taxing authorities do not

have a property interest in a particular piece of real property until they take affirmative acts required under New York law to fix the amount of the tax and to acquire a lien to the extent of that amount. *Makoroff,* 916 F.2d at 894.

According to T.A. Title, there is no basis in the record for finding that County's lien is valid because it has not been shown that said lien was created prior to the filing of the bankruptcy petition. This contention is to no avail for the following reasons.

In the first place, testimony was elicited at the hearing that County's lien was valid. An officer of T.A. Title and debtor's counsel both testified that County's lien against the property was valid. The agreement reached after several hours of intense negotiations at the closing that the purchaser would satisfy County's lien would not have been necessary unless all parties at the closing realized that the lien was valid.[2]

■ Also, if T.A. Title indeed is objecting to the validity of County's lien on the ground that said lien was created postpetition in violation of *Makoroff,* then the true issue is whether County acted in violation of the automatic stay and not whether County has a lien. The burden of proving that a violation of the automatic stay occurred is upon the party alleging the violation—i.e., upon T.A. Title. *See In re Bennett,* 135 B.R. 72, 76 (Bankr.S.D.Ohio 1992) (*citing In re Zunich,* 88 B.R. 721, 725 (Bankr.W.D.Pa.1988)). T.A. Title, if it is to prevail, must show what affirmative steps are required under Pennsylvania law in order for County to have a lien against debtor's property and that such affirmative steps were taken postpetition and therefore were in violation of the automatic stay.

Even after the court raised the matter *sua sponte* and had prodded it to offer evidence and/or testimony on the matter, T.A. Title failed to go forward on this issue. Aside from a few brief remarks from its counsel, T.A. Title offered nothing at the hearing to show that said lien was created in violation of the automatic stay.

Remarks and arguments by counsel have no evidentiary significance. *See Thornton v. United States,* 493 F.2d 164, 167 (3rd Cir.1974).

County, it would seem, does *not* have the burden of showing that its lien was not in violation of the automatic stay. The lack of evidence as to these matters is detrimental to T.A. Title since it has the burden of proof in this regard. There is no basis for finding that County's lien is invalid because it was created by operation of Pennsylvania law in violation of the automatic stay. The vacuum in the record inures to the detriment of T.A. Title.

**B)** *Did County Have Adequate Notice?*

■ T.A. Title notes that the district court held on appeal that County had received adequate notice that the sale was to be free and clear of all liens and argues that said holding is the law of the case and therefore is binding on this court.

County argues that the determination of the district court is not binding on this court and maintains that it did not receive adequate notice that the sale proposed to divest its lien against the property.

The argument that the prior determination of the district court when this matter initially was appealed to it is the law of the case and therefore is binding on this court is without merit.

The decision of the district court affirming the order of this court granting a final decree was reversed by the Court of Appeals with the instruction that the matter be remanded to this court "for development of a record through an evidentiary hearing, if necessary, and for findings of fact in connection with its resolution of the present controversy". *In re Marcus Hook Development Park, Inc.,* 943 F.2d at 268.

■ The doctrine of the law of this case is not applicable in light of the reversal and remanding of the case to this court. As a general matter, a judgment which has

---

**2.** The request that the order of May 20, 1992 be modified in the way suggested also must be rejected because T.A. Title is judicially estopped

from now denying that County has a valid lien against the subject property.

been reversed or set aside on appeal is deprived of its conclusive effect. *Burton v. Foltz*, 810 F.2d 118, 120 (6th Cir.1987) (citation omitted). A matter which has been sent back to the trial court, "... there stands for a new determination of the issues presented *as though they had not been determined before*". (Emphasis added). *In re Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir.1985).

Moreover, the basis of the decision of the Court of Appeals makes it abundantly clear that the district court's prior determination that County had received adequate notice is *not* binding on this court in this proceeding. The Court of Appeals directed that the matter be remanded to this court because this court erroneously had denied the objection to a final decree on jurisdictional grounds and thus had not reached the merits of the objection. The Court of Appeals, in remanding this case, expressed its surprise at the district court's actions in reviewing the factual record and in reaching the merits when this court had not done so:

> The district court held that the bankruptcy court's fact finding was not clearly erroneous and affirmed on that basis. This is a somewhat mysterious conclusion, since the bankruptcy court apparently did not reach the merits of the Purchaser's objections. Rather, the bankruptcy court denied the objection on jurisdictional grounds.

*In re Marcus Hook Development Park, Inc.*, 943 F.2d at 263 n. 2.

Perhaps the most telling indication that the finding of the district court as to the notice given to County is not binding on this court is contained in the following remark:

> We note that there are several factual determinations which probably need to be made before a reasoned decision could be reached ... *If questions regarding notice of the various orders are raised, the bankruptcy court should make findings in this respect as well.* (Emphasis added.)

*In re Marcus Hook Development Park, Inc.*, 943 F.2d at 268 n. 9. The Court of Appeals would not have made this remark had it considered the finding of the district court as to the notice question to be controlling in this instance.

Because the issue of notice has been raised by County's denial that it received adequate notice that the proposed sale would divest its lien, it remains for *this* court to resolve this question in the first instance.

Estate property may be sold other than in the ordinary course of business after "notice and hearing". 11 U.S.C. § 363(b)(1). Local Rule 9013.2(B)(1)(d) requires a motion to sell property free and clear of all liens to plead "with particularity" the identity and address of the holder of each and every lien on the property to be sold. Local Rule 6004.1(A)(5) requires that the seller serve a copy of the motion upon all parties against whom relief is sought and upon their counsel.

Sale of the property did *not* comply with these requirements. County was not included on the list of liens to be divested by the sale and was never served with a copy of the motion to sell. This does not mean, however, that County received no notice at all that the debtor proposed to sell the property to which County's lien was attached. As has been noted, County received a document entitled "Notice of Sale" and received published notice of the sale.

Bankruptcy Rule 2002(c)(1) sets forth the requirements as to the contents of a notice of proposed sale of estate property other than in the ordinary course of business:

> Subject to Rule 6004 the notice of a proposed ... sale ... of property required by subdivision (a)(2) of this rule shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections. The notice of a proposed ... sale ... of property, including real estate, is sufficient if it generally describes the property.

The document entitled "Notice of Sale" received by County satisfied these requirements. The notice generally described the property, the time and place of the proposed sale, and stated that the terms and

conditions announced at the sale would supersede any inconsistent provisions of the notice itself or the motion to sell.

This determination, standing alone, does not necessarily mean that the notice received by County was adequate to place it on notice that the sale proposed to divest its lien against the property. The requirement, set forth at § 363(b)(1), that estate property may be sold other than in the ordinary course of business only after "notice" means after such notice as is appropriate in light of the particular circumstances. 11 U.S.C. § 102(1). The obvious purpose of this mandatory prior notice is to satisfy constitutional requirements where one's interest in property will be adversely affected as a result of judicial action.

It is beyond cavil that the due process clause of the Fifth Amendment to the United States Constitution applies to bankruptcy proceedings. Due process is a highly flexible concept. *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 322, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985). It requires that notice be given to a creditor whose property rights are being affected so that the creditor may have its day in court. *In re Fauchier*, 71 B.R. 212, 215 (9th Cir. BAP 1987). In order for the notice given in such circumstances to comply with due process, it must be:

> ... reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.

*Broomall Industries, Inc. v. Data Design Logic Systems*, 786 F.2d 401, 403–04 (Fed. Cir.1986) (*quoting, Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

The notice received by County, which only apprised it that a sale was to take place at a specified time of property against which it had a lien, was *not* reasonably calculated to apprise County that its lien on the property would be adversely affected. The notice which County received made no mention that its lien would be divested. Indeed, County would not have been apprised of this even if it had

been served with the motion to sell. As has been noted several times already, County was not named as a respondent in the motion itself. It was not included either in the caption to the motion or on the attached list of lienholders whose interests were to be divested.

The fact that the notice which the County did receive stated that the terms and conditions announced at the sale would supersede any inconsistent terms and conditions set forth in the motion to sell or in the Notice of Sale does not alter the outcome. The only thing County knew prior to the sale was that a sale of the property was to occur at a specified time and place and that a change in the terms and conditions of the sale might be announced at the sale. While it unquestionably would have been prudent of County to appear at the sale, it had no reason to suspect that the contemplated sale would divest its lien.

Although due process is a highly flexible concept, it is not so malleable as to be satisfied merely when an interested party is notified only that action is contemplated against the property in which it has an interest. At the very least, the interested party must be reasonably apprised that the contemplated action is directed against *its* interest. The totality of the circumstances in this instance did not so apprise County.

C) *Was The Purchaser A Bona Fide Purchaser?*

■ T.A. Title contends that MHBCC was a *bona fide* purchaser. According to T.A. Title, neither MHBCC nor it was aware of County's lien prior to or at the time of the closing.

County insists that MHBCC was not a *bona fide* purchaser. According to County, MHBCC and T.A. Title were aware of County's lien prior to and at the time of the closing. Notwithstanding their knowledge, MHBCC purchased the property and T.A. Title insured its title.

■ A purchaser of real property is a *bona fide* purchaser only if they purchase without notice of prior interests, if any, of others in the property. *Phillips v. Stroup*,

17 A. 220 (Pa.1889). Actual or constructive notice of another's prior interest can prevent one from becoming a *bona fide* purchaser. *In re Hotel Associates, Inc.*, 10 B.R. 668, 670 (Bankr.E.D.Pa.1981) (*citing Overly v. Hixson*, 169 Pa.Super 187, 82 A.2d 573 (1951)).

The evidence overwhelmingly establishes, and this court finds as a fact, that the purchaser of the property at the closing— i.e., MHBCC, the nominee of Marchuk— had actual notice of County's lien against the property.

Although Marchuk had assigned his right to purchase the property to MHBCC, he nonetheless attended the closing as the representative of MHBCC. County was not present at the closing.

A problem arose at the closing. What normally should have taken an hour or so took the better part of an entire day to complete. MHBCC came to realize prior to the closing that County had a lien against the property and realized that the motion to sell the property had not listed County as a respondent and had failed to include its lien as one of those to be divested. An agreement had been circulated prior to the closing among debtor and several of its creditors, including County, which provided, *inter alia*, that County would waive its claim against the estate. County never executed the agreement and steadfastly refused to waive its tax claim. The closing bogged down because of County's refusal.

An agreement which broke the impasse was reached on November 24, 1986 after several hours of negotiations involving MHBCC, debtor, and counsel to the Committee. Despite its knowledge of County's lien and that the motion to sell had failed to name County as a respondent and had not included its lien among those to be divested, MHBCC was determined to go through with the closing and take title to the property. It was agreed orally that the sale proceeds derived from the closing would be distributed to other lienholders and that County would receive nothing from the sale proceeds. MHBCC, acting through Marchuk, agreed to take the property subject to County's lien and agreed that it

would satisfy the lien itself. The substance of this agreement between MHBCC, debtor, and the Committee is reflected in the provision in the plan of reorganization and lies at the heart of the controversy presently before the court.

T.A. Title also had actual knowledge of County's lien prior to the closing. Albert LaRue, an official of T.A. Title, testified that a lien search of the property, which revealed the existence of County's lien, had been conducted by T.A. Title prior to the closing.

In addition, T.A. Title had ample reason to know that County's lien had not been divested even though the order of August 14, 1986 confirming sale of the property stated that all liens had been divested. On November 14, 1986, counsel to debtor sent a letter to LaRue. Attached to the letter were a copy of the order of August 14, 1986 confirming the sale, a copy of the motion to sell with attached exhibits, a copy of the certificate of service of the motion, and a copy of the above agreement described previously which County refused to execute. Upon his receipt of the documents, LaRue forwarded them to counsel for T.A. Title in accordance with his customary practice. Careful review of these documents should have disclosed what was described previously—namely, that County had not been named as a respondent in the motion and that said motion had not been served on County. At the very least, this should have placed T.A. Title on notice that County's lien (of which it was aware) had not been divested after all.

The insistence of T.A. Title that it had no reason to suspect this and that it reposed its complete trust in the order of August 14, 1986 and upon assurances by debtor's counsel that all liens, including County's, had been divested rings hollow. Mr. LaRue had been employed by T.A. Title for well over two (2) decades at the time of the closing, and was highly sophisticated in all matters pertaining to titles. Also, as has been noted, LaRue forwarded the documents to counsel for T.A. Title for its examination. Even if LaRue did not personally realize that County's lien had not

been divested, counsel to T.A. Title should have so realized.

Finally, T.A. Title was represented at all times during the closing by LaRue and/or its legal counsel. From this it must be inferred that T.A. Title was aware *at the closing* that MHBCC and County had forged the oral agreement described previously. LaRue's insistence that he was unaware of this agreement is wildly implausible. T.A. Title simply erred when it issued the title insurance without exclusion for County taxes.

The insistence of T.A. Title that it was not aware that County had not been adequately served and that it was not aware of the agreement forged at the closing is undercut by the fact that it agreed to allow the closing to be consummated in escrow but insisted on a court order authorizing release of the net sale proceeds. As has been noted, debtor submitted a motion to that effect shortly after the closing. It is highly unlikely that T.A. Title would have insisted on such an order unless it was aware of the agreement and hoped to protect itself against a complaint by County later on that the sale proceeds should not have been released by the settlement officer.

D) *Resolution.*

█ Now that the preliminary issues pertaining to the existence of County's lien, the adequacy of the notice received by County, and the status of MHBCC as a *bona fide* purchaser have been resolved, the ultimate issue posed by T.A. Title and County remains to be resolved: which of the inconsistent orders of August 14, 1986, and March 26, 1987, respectively, is to be given effect?

The positions taken by T.A. Title and County with respect to this issue were stated previously. Resolution of this issue lies in the prior resolution of preliminary issues.

It is a principle of ancient and venerable origin that before a lienholder's interest in property can be divested by sale of the property, it must be made a party to the motion and must be given adequate notice that its interest is to be divested. *Ray v. Norseworthy*, 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1874). A sale pursuant to 11 U.S.C. § 363(b)(1), of which proper notice was not given, may be set aside. *In re Fernwood Markets*, 73 B.R. 616, 619 (Bankr.E.D.Pa.1987).

It has been determined that County was not a respondent to the motion to sell debtor's property and did not receive notice which comported with due process that its lien against debtor's property was to be divested by the sale. It therefore follows that, in spite of the order of August 14, 1986, its lien was not divested. The sale could, under appropriate circumstances, be set aside. Setting aside the sale is too draconian a solution, however, and is not necessary. *In re Marcus Hook Development Park, Inc.*, 943 F.2d at 267–68. No party to this controversy seeks such a drastic outcome. The most reasonable and equitable resolution of this matter is to give precedence to the language in the plan of reorganization over the language in the order confirming sale of the property which divests County's lien.

This court has the power to vacate or to modify its orders, as long as it is equitable to do so. *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 282 (N.D.Ga.1985). A bankruptcy court especially has the power to do so "... where *subsequent* events during administration demonstrate the necessity therefor and to do so would not be inequitable". (Emphasis added). *In re Texlon Corp.*, 596 F.2d 1092, 1101 (2d Cir.1979). (citation omitted).

Events subsequent to the order of August 14, 1986 demonstrate that said order should be modified to the limited extent that it does not divest County's lien. As has been noted, MHBCC came to realize after said order had been issued that County had not been listed as a respondent in the motion to sell and had not received adequate notice that its lien against the property was to be divested. Negotiations involving debtor, MHBCC, and County regarding County's lien prior to the closing were unavailing. County refused to execute the agreement which called for it to

waive its claim. The problem was ultimately resolved at the closing when the above-described oral agreement was reached by MHBCC, debtor and the Committee. MHBCC, which could have walked away from the closing, was determined to move forward. This agreement, which was freely reached after armslength negotiations, dictates that precedence be given to the language in the plan of reorganization which reflects this agreement over inconsistent language in the order confirming sale of the property.

Such an outcome, in addition to its being supported by events which occurred subsequent to the order of August 14, 1986, is also supported by equity and is in the interest of justice. County, through no fault of its own, did not receive adequate notice that the sale proposed to divest its lien. In addition, it received none of the sale proceeds which were distributed to lienholders. MHBCC, by contrast, was cognizant that County received inadequate notice that its lien would be divested by the sale. Instead of refusing to go forward with the closing, MHBCC agreed to satisfy the lien itself. As for T.A. Title, it was aware prior to the closing that County had a lien against the property, knew (or should have known) that the County's lien had not been divested after all, and was aware that the parties had struck a deal at the last minute which enabled the closing to go forward.

In light of all this, it would be inequitable to grant the request of T.A. Title that the order divesting all liens against the property be given precedence over inconsistent language in the plan of reorganization. T.A. Title knowingly incurred risk when without any reservation it insured MHBCC's title to the property. Its cries of "foul!" will not be heard now that what was only a potential risk has been realized. Its injury appears self-inflicted.

## V

### POSTSCRIPT

■ i) One final matter should be addressed. Debtor's counsel and/or co-counsel to the Committee failed on several occasions to serve County with certain motions and notices when its interests were affected and/or failed to serve MHBCC and T.A. Title at other times when their interests were affected. Had adequate and proper notice been given to all affected parties throughout these bankruptcy proceedings, this court in all likelihood would *not* have been required to cut this "Gordian Knot".

For instance, County never received adequate notice that its lien against debtor's property would be divested by the sale. County was never served with a copy of the motion to sell the property, was not named as a respondent to the motion, and was never served with a copy of the order issued on August 14, 1986 which confirmed the sale free and clear of all liens. Had the County been so served, it could have objected to the proposed sale or, at the very least, brought it to the court's attention at that time that its lien had not been included among those liens which were to be divested. The conundrum facing the court at this time probably could have been avoided at the outset.

MHBCC and T.A. Title also were not notified of certain proceedings which had a potentially adverse effect upon their interests. For example, debtor's counsel and/or co-counsel to the Committee failed to serve MHBCC and T.A. Title with the disclosure statement and plan of reorganization and failed to serve them with the notice of the scheduled hearings on these matters. Had they been so served, MHBCC and T.A. Title might have objected to the disclosure statement and plan of reorganization. In particular, they might have objected to the provision that the purchaser of the property would satisfy County's lien. The court could have determined at that time whether their objection was well-founded and perhaps might not have issued the order of March 26, 1987, which is at odds with the order of August 14, 1986. At the very least, T.A. Title then could have presented the position that it has asserted in its present objection to entry of a final decree. Had they done so at that time, the court could have considered their contention long before now and, presumably, could have

avoided the difficult decision it had to make at this time.

The matter unfortunately does not end there. Counsel to debtor and/or co-counsel to the Committee also failed to serve certain other matters upon County and/or MHBCC and T.A. Title after the closing had taken place but prior to distribution. On November 21, 1986, three (3) days prior to the closing, debtor's counsel unsuccessfully attempted to have this court sign an order authorizing the settlement officer at the closing to release the net sale proceeds to co-counsel to the Committee as escrow agent. The court steadfastly refused to do so because notice of the motion had been given to no one. Counsel to debtor and co-counsel to the Committee persisted and tried again on January 12, 1987. Although the order scheduling a hearing on the matter directed that all affected parties were to be served, neither County nor MHBCC nor T.A. Title was served.

As has been noted, approximately $350,-000.00 of the net sale proceeds, a sum sufficient to satisfy all unpaid lienholders of record, including County, was available for distribution at this time. Said funds had not yet been distributed. The second motion to authorize the release of the sale proceeds to co-counsel to the Committee as escrow agent expressly alleged that *MHBCC* had paid the taxes on the property which were owed to County. Had County, MHBCC, and T.A. Title been served with these motions, it is conceivable that the issues now before the court would have been addressed long ago. Now that distribution has been made, resolution of these issues is far more difficult.

It was not until the hearing on debtor's motion for final decree, which motion also had *not* been served on MHBCC and T.A. Title, that the problems which had to be resolved at this time first came to light. One can only wonder at this point whether the failure of counsel was purely coincidental or was part of a calculated course of conduct which was designed to keep certain parties and the court in the dark.

Had any of the parties to the present proceeding clearly and unequivocally argued in their pleadings that counsel to debtor and counsel to the Committee are primarily responsible for the problem due to their selective failure to serve interested parties at critical times and therefore should be required to satisfy County's lien, this court would have given serious consideration to such a request. As no party has clearly requested such relief, it perhaps would be inappropriate for the court to fashion such a draconian remedy *sua sponte.*

In addition, it is not clear that counsel had sufficient notice that such a remedy might be appropriate in this case. This is not to say, however, that we would refuse to consider the matter if it were placed before us by an interested party in a manner so as to place counsel to debtor and co-counsel to the Committee on notice that the outcome may adversely affect them. In other words, they are entitled to the sort of notice that they failed to provide County, MHBCC, and T.A. Title in this case before action against them can be taken.

ii) T.A. Title has requested since the Memorandum Opinion and Order of May 20, 1992 were issued that the portion of the order granting a final decree be modified so as to permit any interested party to raise within sixty (60) days matters pertaining to the above-described conduct of counsel debtor and counsel to the Committee. The request will be granted. In addition, the court will retain limited jurisdiction over this case until such matters, if indeed they are raised, have been resolved.

Debtor's response that the order of May 20, 1992 should not be modified as requested because there is no basis upon which the court could find that there was a concerted or calculated course of conduct by its counsel which would entitle any affected party to relief must be rejected as premature. It is not possible to determine whether T.A. Title is entitled to relief until the matter has been raised and heard. Only then will the court be in a position to determine whether debtor's position is correct or not.

An appropriate Order shall be issued.

## ORDER OF COURT

AND NOW at Pittsburgh this 14th day of August, 1992, in light of the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that the Memorandum Opinion issued on May 20, 1992 is WITHDRAWN and the attached order issued on that date is VACATED.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the provision in the Joint Plant of Reorganization, which was confirmed on March 26, 1987, that the County of Delaware would retain its lien against debtor's real property takes precedence over the provision in the order of August 14, 1986 confirming sale of said property free and clear of *all* liens. Notwithstanding language to that effect in the order of August 14, 1986, the sale was *not* free and clear of the lien against said property by Delaware County.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Motion For Reconsideration of the Order dated May 20, 1992 by T.A. Title Insurance is GRANTED IN PART and DENIED IN PART. The request that said order be modified so as to assert that the order of August 14, 1986 confirming the sale of debtor's real property free and clear of all liens takes precedence over language in the Joint Plan of Reorganization that the County of Delaware would retain its lien is DENIED. The request that said order be modified so as to permit any interested party to raise within sixty (60) days of this order any matters pertaining to conduct by counsel to debtor or counsel to the committee of unsecured creditors is GRANTED. The court shall retain jurisdiction over this case for the limited purpose of resolving any such matters that are raised.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that, subject to the above provisions of this Order, debtor's Motion For Final Decree is GRANTED. The objection of T.A. Title Insurance Company to entry of a final decree is OVERRULED.