OPINION OF THE COURT
COWEN, Circuit Judge.
This appeal follows an order of the district court affirming the bankruptcy court’s denial of an objection to a motion for final decree. The objection was filed by Marcus Hook Business and Commerce Center Limited (“MHBCC”), Marcus Hook Corporation (“MHC”), Bell Savings Bank (“Bell”), and T.A. Title Company (“T.A. Title”) (collectively the “Purchaser”) in response to a motion for final decree filed by the debtor, Marcus Hook Development Park, Inc. (“MHDP”). At the center of the dispute are conflicting orders of the bankruptcy court which alternately approved the sale of a piece of property, free of any liens, to the Purchaser’s predecessor in interest, and then reimposed a lien after the sale had been made. We will reverse the district court and order it to remand the case to the bankruptcy court so that the bankruptcy court may resolve this controversy.
I.
In December, 1983, MHDP filed a petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101-74 (1988). MHDP’s sole asset was 35 acres of developed industrial real estate located in the Borough of Marcus Hook, Delaware County, Pennsylvania (the “property”). Delaware County (the “County”) held a $125,000 tax lien against that property. By order of the bankruptcy court, one acre of the property was subsequently sold at a public bankruptcy sale on June 4, 1985.
Thereafter, MHDP began negotiations with Dennis Marchuk regarding the sale of the other thirty-four acres. On July 17, 1986, MHDP filed a motion to sell its remaining acreage to Marchuk free and clear of liens and encumbrances. All creditors, including the County, were served with a notice of the proposed sale. After receiving notice, the County advised MHDP that it would waive its priority tax claim and agreed to be treated as an unsecured creditor. No objection to the sale was ever filed by the County.
An order confirming the sale to Marchuk was entered by the bankruptcy court on August 14, 1986. That order expressly stated that “said sale is free and clear of all mortgages, judgments, liens and encumbrances.” In addition, the August 14 order provided that the sale was duly advertised, that proof of publication and service had been filed with the bankruptcy court, and that notice of the sale had been given to creditors and other parties in interest.
Before the closing, Marchuk assigned his rights in the property to MHBCC. On November 24, 1986, closing was held, pursuant to which MHBCC received a special warranty deed for $560,000. MHBCC granted a mortgage upon the property to Bell. T.A. Title held the $560,000 in escrow, and provided title insurance to both MHBCC and Bell. MHC is the successor in title to MHBCC.
A month-and-a-half after the closing, MHDP and the Official Unsecured Creditor’s Committee filed a disclosure statement in support of the proposed plan for reorganization. The disclosure statement provided that the “Debtor’s real estate was sold under and subject to the continuing lien of the County of Delaware. The County’s taxes shall therefore be dealt with by the purchaser of the property and the County shall not receive any dividend on account of its claims against the estate.” Moreover, it stated that the County “shall continue to hold a lien against the property after the sale of the real estate. This claim will be dealt with by the purchaser. The County of Delaware will not receive any dividend from the estate.” Despite the conflict between the August 14 order and the disclosure statement, the bankruptcy court entered an order on February 11, *263 1987, which approved the disclosure statement. The February 11 order required that all parties in interest be served with the disclosure statement, but it is not clear from the record if the Purchaser was so served.
On May 7, 1990, more than three years after the February 11 order, MHDP filed a motion for final decree. Upon being served with this motion, the Purchaser filed a timely objection. Specifically, the Purchaser pointed out that the August 14 order and the February 11 order were inconsistent with each other, and requested that the bankruptcy court remedy the problem. After a hearing, the bankruptcy court granted MHDP's motion for final decree. The bankruptcy court overruled the Purchaser's objection for two stated reasons. First, it characterized the basis for the objection as a dispute between non-debtors, and held that such a dispute was neither a core proceeding nor a related proceeding. Second, the bankruptcy court held that it had no authority to vacate the February 11 order at this late stage of the proceedings. Thus, the bankruptcy court never dealt with the merits of the Purchaser's objection, denying relief on the grounds that it had no jurisdiction.
The Purchaser then appealed to the district court. Reasoning that the bankruptcy court's findings were not clearly erroneous, even though no such findings appear in the bankruptcy court's orders, the district court affirmed the final decree. It would therefore seem that the district court affirmed on the merits although the bankruptcy court never addressed the merits. Subsequently, this appeal was timely filed.[1]
II.
First and foremost, this is a case of common sense. There are two bankruptcy court orders which clearly contradict each other. The first says that the Purchaser acquired the debtor's property free and clear of all liens; the second reimposes the County's tax lien. Obviously, both orders cannot be given effect, at least not in this world. Presented with this rather confusing state of affairs, the Purchaser logically went to the source of the problem, the bankruptcy court, and requested appropriate relief. Stating that it lacked jurisdiction, the bankruptcy court took no action on the Purchaser's objection. On appeal, the district court reached the merits, affirming bankruptcy court findings that do not appear in the bankruptcy court's orders.
"As an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for error. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir.1981). Our vantage point is identical to that of the district court ... `so we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review.' Id. at 102. Thus, in reviewing the district court's review of the bankruptcy court's factual findings, we, like the district court, employ the `clearly erroneous' standard.... [T]he district court's legal determinations receive no presumption of correctness.
Resyn Corp. v. United States, 851 F.2d 660, 664 (3d Cir.1988).[2]
*264 First, we turn to the question of the bankruptcy court’s jurisdiction. Although not clearly stated, one of the rationales cited by the bankruptcy court for its denial of the Purchaser’s objection was a lack of subject-matter jurisdiction. It is well-settled that the bankruptcy court potentially has jurisdiction over four types of title 11 matters, pending referral from the district court:[3] (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. In re Wolverine Radio Co., 930 F.2d 1132, 1141 (6th Cir.1991); Matter of Wood, 825 F.2d 90, 92 (5th Cir.1987). See 28 U.S.C. § 1334.[4] The first of these categories, cases under Title 11, “refers merely to the bankruptcy petition itself.” Matter of Wood, 825 F.2d at 92. This action goes beyond the bankruptcy petition. See In re Wolverine Radio Co., 930 F.2d at 1141 and n. 14.
Thus, we are required to determine if this action falls within one of the other three categories, thereby conferring jurisdiction upon the bankruptcy court. It is not necessary, though, to fit the proceeding into one of these particular categories, since “they operate conjunctively to define the scope of jurisdiction.” Matter of Wood, 825 F.2d at 93. Accord, In re Wolverine Radio Co., 930 F.2d at 1141. Hence, we need only determine “whether a matter is at least ‘related to’ the bankruptcy.” Id.
A proceeding is related to bankruptcy if “the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy,” Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). Accord In re Fietz, 852 F.2d 455, 457 (9th Cir.1988); Matter of Wood, 825 F.2d at 93; In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir.1987); In re A.H. Robins Co., Inc., 788 F.2d 994, 1002 n. 11 (4th Cir.), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); In re Salem Mortgage Co., 783 F.2d 626, 634 (6th Cir.1986). A key word in this test is “conceivable.” Certainty, or even likelihood, is not a requirement. In re Wolverine Radio Co., 930 F.2d at 1143. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on “the debtor’s rights, liabilities, options, or freedom of action” or the “handling and administration of the bankrupt estate.” In re Smith, 866 F.2d 576, 580 (3d Cir.1989). Accord Pacor, Inc. v. Higgins, 743 F.2d at 994.
*265 We hold that the present proceeding is related to bankruptcy. A party moving for final decree asks that the case be closed because the estate has been fully administered. 11 U.S.C. § 350 (1988); Bankr.R. 3022. Should the objection to the motion for final decree be sustained, the bankruptcy court would retain its power to issue any orders necessary to administer the estate. Bankr.R. 3020(d). See 11 U.S.C. § 105(a) (1988); In re Bryant, 111 B.R. 474, 477 n. 2 (E.D.Pa.1990) (bankruptcy court still has jurisdiction even though debtor’s underlying bankruptcy had been discharged because the case was not closed). Certainly, additional orders might potentially effect the bankrupt estate. For example, the bankruptcy court could set aside the sale pursuant to Fed.R.Civ.P. 60(b)(6) and Bankr.R. 9024. See Matter of Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir.1988), cert. denied 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989) (“confirmed sales — which are final judicial orders — can be set aside” under Rule 60(b), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 9024).[5] Less drastic measures include entering an order which affirms the August 14 order notwithstanding other orders to the contrary. Indeed, an order of this sort may be required if final decree is to be granted; it is doubtful that an estate can be fully administered, consistent with Rule 3022, until conflicting orders are reconciled. Under these circumstances, it cannot be argued that the present proceeding would have no conceivable effect on the estate.[6] Contrary to the bankruptcy court’s determination, then, it does have jurisdiction over this matter.
MHDP relies on In re Hall’s Motor Transit Co., 889 F.2d 520 (3d Cir.1989), for the proposition that the bankruptcy court does not have subject-matter jurisdiction. At first blush, Hall’s Motor seems to help MHDP. In Hall’s Motor, a purchaser obtained property from the debtor in bankruptcy court. Several months later, the sale was closed. During the interim, the property was rezoned in a manner unfavorable to the purchaser. Although aware of the rezoning, the purchaser took no action before the closing. Thereafter, the purchaser requested declaratory and injunctive relief from the bankruptcy court that would prohibit enforcement of the new zoning ordinance. We held that the bankruptcy court could not entertain the complaint, reasoning that its “jurisdiction does not follow the property, but rather, lapses when the property leaves the debtor’s estate.” Id. at 522. Here, the property has also left the estate.
Although Hall’s Motor accurately summarizes the law, it is clearly inapposite to the matter before us. The most important difference between the two cases arises from the nature of the respective proceedings. In Hall’s Motor, the purchaser ac *266 quired the property pursuant to a court order which apparently did not address the zoning issue. Moreover, the Hall’s Motor purchaser had notice of the rezoning prior to closing the sale, and indeed, the sale was “affirmed by the bankruptcy court after the rezoning had occurred.” Id. No subsequent order addressed zoning. The purchaser, then, had no complaint with the sale or any attendant judicial action. Instead, its attention was focused on the property itself; the purchaser’s pivotal argument, we noted, was “that the right to use the property as [it was used under the old zoning ordinance] is a right belonging to [the debtor’s] estate which came within the jurisdiction of the bankruptcy court as part of the estate.” Id. Since the property had left the estate, we correctly refused jurisdiction.
The present case offers a sharp contrast. By means of the August 14 order, the bankruptcy court confirmed the sale of MHDP’s property to the Purchaser “free and clear of all ... liens.” But without any explanation, and seemingly without notice to the Purchaser, the County lien was reimposed by the February 11 order. After discovering that its property was subject to the County’s lien, the Purchaser objected. However, the objection was not directed to the property, but to the judicial orders controlling the disposition of that property. Unlike the requested relief in Hall’s Motor, then, which did not contest the order of sale and which therefore only tangentially touched the bankruptcy proceedings, the relief sought here directly implicates the conflicting bankruptcy court orders.
This is an important difference. Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), permits the bankruptcy court to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” It was this section which gave the bankruptcy court the power to issue the August 14 and February 11 orders. It is also this section which gives the bankruptcy court “the power and the jurisdiction to enforce its valid orders.” In re Radco Merchandising Services, Inc., 111 B.R. at 688-89. Hall’s Motor cannot possibly be read to take this grant away from the bankruptcy court. See Big Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. at 282-83 (holding that bankruptcy court could enjoin transfer of bankrupt estate’s property even though the property had already been transferred out of debt- or’s estate where that transfer violated earlier court orders). Since the Purchaser’s objection merely asks the bankruptcy court to enforce the August 14 order approving a sale free and clear of liens, the bankruptcy court therefore has undisputed jurisdiction over the Purchaser’s objection. Not only is the Purchaser’s objection jurisdictionally correct, but it also makes perfect sense; given the conflicting nature of the two orders, only one can be enforced.
III.
The bankruptcy court offered a second reason for its decision to deny the Purchaser’s objection: the objection did not constitute a core proceeding. Whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction. Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding, but still might not be able to enter final judgments and orders.
Section 157 provides the bankruptcy court with two levels of judicial power, depending on the type of proceeding before it. If a proceeding is “core,” the bankruptcy court may “hear and determine the issues and may enter appropriate judicial orders and judgments subject to traditional appellate review.” Weintraub & Resnick, supra note 3, at ¶ 6.04[2] (summarizing 28 U.S.C. § 157(b)(1)). With respect to a “non-core” proceeding, the bankruptcy court’s power is more limited. It may only hear the matter and submit proposed findings of fact and conclusions of law. These findings and conclusions are reviewed de novo by the district court. Any final orders or judgments must be entered by the district court, unless the parties and the district court agree otherwise. 28 U.S.C. § 157(c)(2). See In re Meyertech Corp., 831 F.2d 410, 416 (3d Cir.1987). See also *267 Weintraub & Resnick, supra note 3, at 11 6.04[2], Thus, to determine if the bankruptcy court has the power to provide the relief requested by the Purchaser, we must decide whether this action is a core or non-core proceeding. In re Wolverine Radio Co., 930 F.2d at 1144.
We hold that the objection to the motion for final decree is a core proceeding. While core proceedings are not statutorily defined, section 157(b)(2) does provide a non-exhaustive list of examples. 28 U.S.C. § 157(b)(2). See In re Meyertech Corp., 831 F.2d at 416; Matter of Wood, 825 F.2d at 95. Additionally, we have held that a “ ‘proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.’ ” Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir.1990) (quoting Matter of Wood, 825 F.2d at 97). See In re Wolverine Radio Corp., 930 F.2d at 1144-45.
Depending on how the Purchaser’s objection is characterized, it falls within the list of examples in section 157(b)(2). First, the purchaser’s objection is expressly designed to determine the validity or extent of the County’s lien against the property. Section 157(b)(2)(E), which states that “determinations of the validity, extent, or priority of liens” are core proceedings, therefore applies. By objecting to the motion for final decree, the Purchaser can also be viewed as trying to enforce the August 14 sale order. As such, the objection is directly analogous to section 157(b)(2)(N), which provides that “orders approving the sale of property” are core proceedings. Under either characterization, then, the Purchaser’s objection is a core proceeding. See In re Meyertech Corp., 831 F.2d at 418 (proceeding is core because it comports with one of the examples provided by section 157).[7]
Not only does the Purchaser’s objection fit under section 157(b)(2)(E) and (N), but it also satisfies the Beard v. Braunstein test. There exist two orders governing MHDP’s estate, both of which were entered by the bankruptcy court during the course of a bankruptcy case. One order is contrary to the other, but no effort was made to explain the difference. Given these rather unique circumstances, we conclude without hesitation that the present proceeding could only arise in a bankruptcy case, and is therefore core. See In re Wolverine Radio Co., 930 F.2d at 1145 (proceeding is core because the issues arose as a result of a bankruptcy proceeding). As such, the bankruptcy court has at its disposal all the judicial tools necessary to address the merits of the Purchaser’s objection.
IV.
A third and final reason suggested by the bankruptcy court for its denial of the purchaser’s objection is impracticability. At this late stage of the bankruptcy case, reasoned the bankruptcy court, it would be “inappropriate” to rectify the problem created by the conflicting orders of August 14 and February 11. MHDP makes a related argument, contending that the appeal is moot because it would be impossible for a court to provide the relief sought.[8] Indeed, if the bankruptcy court were required to vacate the sale of the property, order creditors to disgorge funds, vacate the order approving the disclosure statement, and vacate the order confirming the reorganization plan, we might be compelled to affirm. See In re Highway Truck Drivers & Helpers Local # 107, 888 F.2d at 299; Bankr.R. 8005.
*268 But less draconian alternatives exist. All the bankruptcy court need do is hold a hearing, resolve the factual questions which remain in this case,[9] and enter an appropriate order with findings of fact and conclusions of law explaining its decision. At worst, the County would be forced to forego its priority tax claim, a result not terribly unseemly, especially since the County has refused to participate in this case. In short, there are no equitable considerations which justify the bankruptcy court’s decision, nor is the relief sought impracticable.
V.
For all of the above reasons, we find that the bankruptcy court clearly erred in denying the Purchaser’s objection. The bankruptcy court had subject-matter jurisdiction, the proceeding before it was core, and the relief sought was not barred by equitable concerns or impracticability. It follows that the district court also erred in affirming the bankruptcy court’s decision. We will therefore reverse the order of the district court affirming the bankruptcy court’s order granting the final decree, with instructions that it remand the case to the bankruptcy court for development of a record through an evidentiary hearing, if necessary, and for findings of fact in connection with its resolution of the present controversy. Costs taxed against MHDP.

. Although it received notice, the County chose not to participate in the proceedings below, and has opted for the same course of action (or inaction) in this appeal. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 158(d) (1988).

. The district court held that the bankruptcy court's factfinding was not clearly erroneous and affirmed on that basis. This is a somewhat mysterious conclusion, since the bankruptcy court apparently did not reach the merits of the Purchaser's objection. Rather, the bankruptcy court denied the objection on jurisdictional grounds. Whether or not jurisdiction exists is a question of law subject to plenary review, United States v. Markus, 721 F.2d 442, 443 (3d Cir.1983), so it would seem that the district court erred by applying the wrong standard of review. However, we do not rely on this error as grounds for reversal. Instead, our holding today, as will be discussed infra, is that the bankruptcy court had the jurisdiction and the power to resolve the merits of the Purchaser's objection.

. Actually, jurisdiction lies with the district court. See 28 U.S.C. § 1334(a), (b) (1988). However, the district court routinely refers most bankruptcy cases to the bankruptcy court. See 28 U.S.C. § 157(a) (1988). See generally B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 6.04 (rev. ed. 1986). This is usually accomplished by local rule or order.

. The petition for bankruptcy in this case was filed in December, 1983. At that time, the United States Supreme Court had declared the Bankruptcy Reform Act of 1978 unconstitutional, Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and Congress had not yet enacted a lawful scheme. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353 (1984) (amending the Bankruptcy Reform Act, but not becoming effective until July 10, 1984). To avoid the total collapse of the bankruptcy court system during this interim period, the Judicial Conference of the United States proposed an emergency model rule that was approved by every judicial circuit for adoption by district courts as a local court rule. Weintraub & Resnick, supra note 3, at ¶ 6.03. See In re Morrissey, 717 F.2d 100, 104 (3d Cir.1983). The model rule, then, initially provided the governing jurisdictional standards for the present matter. But the model rule, which referred all bankruptcy cases and related civil proceedings from the district court to the bankruptcy court, operated in the same manner as 28 U.S.C. § 1471(a) and (b) of the repealed Bankruptcy Reform Act. See Weintraub & Res-nick, supra note 3, at ¶ 6.03 (model rule "permitted bankruptcy judges to entertain all matters that it could have decided under the Bankruptcy Reform Act prior to Northern Pipeline.”). Moreover, the jurisdictional provisions of the 1984 Amendments — 28 U.S.C. § 1334(a) and (b) — are virtually identical to section 1471(a) and (b). Therefore, cases interpreting section 1471 or section 1334 guide our analysis of the issue presented by this proceeding, irrespective of the governing grant of jurisdiction. See Matter of Wood, 825 F.2d at 92 (because section 1334 was taken virtually verbatim from section 1471, judicial interpretations of the Bankruptcy Reform Act are "instructive.”). See also In re Wolverine Radio Co., 930 F.2d at 1141 n. 14 (“guidance in interpretation is still furnished by the congressional history of the 1978 legislation.’’).

. “It is well settled that a bankruptcy court has the power to vacate or modify its orders, as long as it is equitable to do so." Big Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. 272, 282 (N.D.Ga.1985). See, e.g., In re Texlon Corp., 596 F.2d 1092, 1101 (2d Cir.1979) (“There is a practical utility in the application of a rule which permits the vacation or modification of bankruptcy orders where subsequent events presented during administration demonstrate the necessity therefor; and to do so would not be inequitable." (citation omitted)); In re Radco Merchandising Services, Inc., 111 B.R. 684, 689 (N.D.Ill.1990) ("Like a court of equity, the bankruptcy court has the power to amend, modify, or vacate its earlier orders.”).

. Our conclusion is supported by In re Wolverine Radio Co., 930 F.2d 1132, a recent case decided by the Court of Appeals for the Sixth Circuit. There, a purchaser acquired a radio station in a “free and clear” sale conducted by a Chapter 11 debtor. The Michigan Employment and Security Commission (MESC) sought to determine the purchaser's unemployment tax liability based upon the debtor’s past rate of contribution. A suit was brought against MESC on behalf of the purchaser in which it was argued that MESC could not assign the rate of contribution of a prior owner when the sale was conducted "free and clear” pursuant to a reorganization plan in bankruptcy. MESC contended that the bankruptcy court did not have jurisdiction to determine the tax liability of a non-debtor.
The Sixth Circuit ruled in favor of the purchaser on the jurisdictional issue, holding that subject matter jurisdiction existed in the bankruptcy court because there may have conceivably been an effect on the estate being administered in bankruptcy. Thus, it was a proceeding "related to” the bankruptcy. Id. at 1140-43.

. The bankruptcy court seemingly classified the purchaser’s objection as an attempt to vacate the March, 1987, order confirming the plan of reorganization. On the other hand, MHDP characterizes the Purchaser’s objection to the motion for final decree, and the subsequent appeal, as an effort to "undo" the sale of the property. Our review of the record and the briefs indicates that neither characterization is accurate.

. In addition, MHDP argues that confirmed sales and reorganization plans cannot be dial-lenged on appeal absent a stay. In re Highway Truck Drivers & Helpers Local # 107, 888 F.2d 293, 299 (3d Cir.1989). There was no stay in the present case. However, MHDP misunderstands the nature of the Purchaser’s objection. The Purchaser is not challenging the sale or the plan, but instead, is seeking to reaffirm the order of sale by contesting the motion for final decree. Therefore, a stay is not required.

. We note that there are several factual determinations which probably need to be made before a reasoned decision could be reached. For example, the district court remarked that "the critical events of the November 24, 1986 closing are very much in disspute [sic].” App. at 214. MHDP asserts that the County reconsidered its previous decision to waive its priority tax claim, and that the closing was conducted with that understanding. But the district court noted, "this reconsideration ... is nowhere referenced in the record." Id. It is of course axiomatic that an appellate court will not consider off-the-record evidence. In re Sugar Industry Antitrust Litigation, 579 F.2d 13, 19 (3d Cir.1978). The bankruptcy court should make findings of fact in this regard, since those findings are necessary to support its decision and to inform an appellate court so that it may appropriately analyze the bankruptcy court’s decision in the event review is sought. See 11 U.S.C. § 363(m) (1988) (protecting, absent a stay, good faith purchasers of the debtor’s property); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147, 149 (3d Cir.1986). If questions regarding notice of the various orders are raised, the bankruptcy court should make findings in this respect as well.