In re J & L STRUCTURAL,
INC., Debtor.

William Pineo, Trustee, Plaintiff,

v.

CPT Holdings, Inc.; Mentmore Holdings Corporation; Howell A. Breedlove, Jr., Individually And As An Officer Of J & L Structural, Inc.; James E. Howe, Individually And As An Officer Of J & L Structural, Inc.; and Carl Snyder, Individually And As An Officer And Director Of J & L Structural, Inc., Defendants,

William Pineo, Trustee, Plaintiff,

v.

Pittsburgh Logistics Systems,
Inc., Defendant,

William Pineo, Trustee, Plaintiff,

v.

Roanoke Electric Steel Corporation,
Defendant,

William Pineo, Trustee, Plaintiff,

v.

Voest–Alpine Industries, Defendant,

William Pineo, Trustee, Plaintiff,

v.

Carlson Manufacturing Co.,
Inc., Defendant,

William Pineo, Trustee, Plaintiff,

v.

Hilb, Rogal & Hamilton Co. Of
Pittsburgh, Defendant,

William Pineo, Trustee, Plaintiff,

v.

Stena Metal, Inc., Defendant,

William Pineo, Trustee, Plaintiff,

v.

Marcus & Shapira, LLP, Defendant,

William Pineo, Trustee, Plaintiff,

v.

BMI Refractory Services,
Inc., Defendant.

Bankruptcy No. 00–25068 BM.
Adversary Nos. 02–2360 BM, 02–2362 BM, 02–2363 BM, 02–2366 BM, 02–2367 BM, 02–2370 BM, 02–2376 BM, 02–2377 BM, 02–2379 BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 2, 2003.

Robert O. Lampl, Pittsburgh, PA, for Plaintiff Trustee.

Marc Morley Kane, Pittsburgh, PA, for Adv. No. 02–2360 BM Defendants Carl Snyder and James E. Howe.

William E. Kelleher, Jr., Pittsburgh, PA, for Adv. 02–2360 BM Defendant Howell A. Breedlove, Jr.

Kimberly L. Wakim, Pittsburgh, PA, for Adv. No. 02–2362 BM Defendant.

James D. Newell, Pittsburgh, PA, for Adv. No. 02–2363 BM Defendant.

Paul David Burke, Pittsburgh, PA, for Adv. No. 02–2366 BM Defendant.

Paul David Burke, Pittsburgh, PA, for Adv. No. 02–2367 BM Defendant.

Michael Henny, New York City, for Adv. No. 02–2370 BM Defendant.

Marc Morley Kane, Pittsburgh, PA, for Adv. No. 02–2376 BM Defendant.

Darlene M. Nowak, Pittsburgh, PA, for Adv. No. 02–2377 BM Defendant.

David K. Rudov, Pittsburgh, PA, for Adv. No. 02–2379 BM Defendant.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Defendants have brought motions to dismiss the above adversary actions, which were brought to avoid and recover certain alleged payments debtor made to them prior to the filing of debtor's bankruptcy petition. The adversary actions should be dismissed, defendants assert, because subject-matter jurisdiction is lacking and because they are time-barred.

The chapter 7 trustee, who was substituted as plaintiff in these adversary actions after the bankruptcy case was reinstated and converted to a chapter 7 proceeding, opposes defendants' motions.

We will deny defendants' motions to dismiss for reasons set forth in this memorandum opinion.

### –FACTS–

Debtor was in the business of manufacturing various structural steel products.

Debtor commenced this bankruptcy case by filing a voluntary chapter 11 petition on June 30, 2000.

On June 28, 2002, two days prior to the second anniversary of the bankruptcy filing, debtor and the general unsecured creditors' committee filed numerous complaints and commenced the above adversary actions against defendants named therein.

The complaints found at Adversary Nos. 02–2362, 02–2363, 02–2366, 02–2367, 02–2370, 02–2376 and 02–2377 are each comprised of a single count. They allege that debtor made monetary transfers to defendants within ninety days of the commencement of the bankruptcy case and seek to avoid the transfers as preferences in accordance with § 547(b) of the Bankruptcy Code and to recover them from defendants as initial transferees in accordance with § 550(a)(1) for the benefit of the bankruptcy estate.

The complaint found at Adversary No. 02–2360 is comprised of multiple counts. It alleges that defendants were insiders of debtor who received monetary transfers from debtor within one year of the commencement of the bankruptcy case and seeks to avoid the transfers as preferences in accordance with § 547(b) and to recover them from defendants as initial transferees for the benefit of the bankruptcy estate in accordance with § 550(a)(1).

Debtor's plan of reorganization, which proposed selling debtor's remaining production facility, was confirmed on July 29, 2002.

After the proposed sale of debtor's facility fell through and it became clear no other buyer could be found, Congress Financial Corporation ("CFC"), debtor's largest secured creditor and the driving force in the bankruptcy case, brought a motion on August 12, 2002, to convert debtor's case to a chapter 7 proceeding or to dismiss it altogether. When neither debtor nor any other creditor objected to CFC's motion at a hearing on the matter, an order dismissing the bankruptcy case for cause pursuant to § 1112(b) of the

Bankruptcy Code was entered on August 20, 2002.

On October 21, 2002, approximately two months after the case was dismissed, certain former employees of debtor brought a motion to reopen the bankruptcy case and to appoint a chapter 11 trustee. Movants alleged, among other things, that CFC had been overpaid; that they had been denied access to their benefits records; and that appointment of a chapter 11 trustee would provide a means of remedying these problems.

A hearing on the motion was held on December 31, 2002. When no party in interest in attendance at the hearing objected, an order reopening the bankruptcy case and converting it to a chapter 7 proceeding was entered that same day. A chapter 7 trustee was appointed shortly thereafter.

A status conference in each of the above adversary actions was held on April 28, 2003. Those defendants who had not answered the complaints against them prior to dismissal of the bankruptcy case were directed to file responses thereto within ten days of the date of the conference.

An order was entered on May 12, 2003, approving a motion by the chapter 7 trustee to substitute himself in place of debtor and the unsecured creditors as plaintiff in the above adversary actions.

Defendants brought motions shortly thereafter to dismiss for various reasons the various adversary actions brought against them. The arguments presented by defendants in support of dismissal were the same in every instance. Oral arguments on the motions and the objection thereto of the chapter 7 trustee were heard on July 16, 2003, and August 15, 2003.

–DISCUSSION–

## I.) Lack of Subject–Matter Jurisdiction.

■ Defendants assert that the order of December 31, 2002, dismissing the bankruptcy case resulted in the automatic dismissal of these adversary actions and that we consequently now lack subject-matter jurisdiction to hear and decide the adversary actions.

This argument is without merit.

■ Dismissal of a bankruptcy case *ordinarily* results in dismissal of all "related proceedings" because jurisdiction over the latter depends in the first instance upon the nexus between the underlying bankruptcy case and the proceedings related thereto. *Smith v. Commercial Banking Corp. (In re Smith)*, 866 F.2d 576, 580 (3d Cir.1989). If, for example, a bankruptcy case is dismissed, any adversary action commenced in connection with the bankruptcy case ordinarily also is dismissed.

■ This general principle is not without exception, however. *In re Smith*, 866 F.2d at 580. A bankruptcy court has limited discretion based on considerations of fairness, convenience and judicial economy to retain jurisdiction over a proceeding that is "related to" a bankruptcy case that has been dismissed. No such discretion exists, however, for an adversary proceeding "arising under" or "arising in" a title 11 case. *In re Davison*, 186 B.R. 741, 742 (Bankr.N.D.Fla.1995); *In re Roma Group, Inc.*, 137 B.R. 148, 150 (Bankr.S.D.N.Y. 1992).

The phrases "arising under," "arising in" and "related to" are terms of art in this context and describe differences in the nexus between a bankruptcy case and another proceeding in the bankruptcy case.

A bankruptcy court has subject-matter jurisdiction over four types of proceedings: (1) cases *under* title 11; (2) proceedings

*arising under* title 11; (3) proceedings *arising in* a title 11 case; and (4) proceedings *related to* a case under title 11. *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991). Our jurisdiction is exclusive with respect to the first category and is original but not exclusive with respect to the remaining three. See 28 U.S.C. §§ 1334(a) and (b).

The first category "refers to the bankruptcy petition itself." *In re Marcus Hook,* 943 F.2d at 264 (*quoting Matter of Wood,* 825 F.2d 90, 92 (5th Cir.1987)).

The second category refers to proceedings that are created or determined by a specific statutory provision of the Bankruptcy Code itself. *In re Wolverine Radio,* 930 F.2d 1132, 1144 (6th Cir.1991), *cert. dismissed,* 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317. 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992). Proceedings brought pursuant to § 547(b) or § 548 of the Bankruptcy Code are examples.

The third category pertains to proceedings which, by their very nature, could arise only in the context of a bankruptcy case. *Id.,* 930 F.2d at 1144.

The final category consists of proceedings whose outcome "could conceivably have an effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). The scope of this category has "some breadth." *Celotex Corp. v. Edwards,* 514 U.S. 300, 307–08, 115 S.Ct. 1493 1499, 131 L.Ed.2d 403 (1995). Bankruptcy jurisdiction over such proceedings exists:

> ... so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or "the handling and administration of the bankruptcy estate." *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989).

*In re Marcus Hook,* 943 F.2d at 264.

Applying these definitions to the matter now before us, we conclude that all of the causes of action stated against the defendants in these adversary actions "arise under" title 11. They are created by §§ 544, 547(b) and/or § 548(a) of the Bankruptcy Code.

It follows from the above-stated principles concerning dismissal of a bankruptcy case that these adversary actions also were dismissed when the bankruptcy case was dismissed on December 31, 2002. This conclusion notwithstanding, it does *not* follow that we presently have no jurisdiction over these adversary actions.

We unquestionably had jurisdiction over the causes of action stated in the complaints which commenced these adversary actions on June 28, 2002, because they "arose under" title 11, as defined above. We presently have jurisdiction over these causes of action as a result of the order of December 31, 2002, even though they initially were dismissed along with the bankruptcy case on August 20, 2002.

The legal effect of the *vacatur* dated December 31, 2002, on the order of dismissal dated August 20, 2002, was to render the latter order a nullity. It was as if the order of dismissal had never been entered. *U.S.A. v. Jerry,* 487 F.2d 600, 607 (3d Cir.1973). As far as we are able to determine, *Jerry* remains the law in this circuit. The status of the bankruptcy case as a result of the order of December 31, 2002, was to restore it as though it had never been dismissed. *Wynne v. Rochelle,* 385 F.2d 789, 796 (5th Cir.1967).

The effect of the order dated December 31, 2002, is much the same if it reopened the bankruptcy case pursuant § 350(b) of the Bankruptcy Code rather than vacated the order dismissing it. The fiction is indulged that a case reopened pursuant to this provision was "never closed." *Figlio*

v. American Management Services, Inc. (In re Figlio), 193 B.R. 420, 424–25 (Bankr.D.N.J.1996).

We conclude in light of the foregoing that defendants' assertion that we lack subject-matter jurisdiction over these adversary actions in light of the order of dismissal dated August 20, 2002, is erroneous.

■ Defendants' assertion that we lack subject-matter over these adversary actions does not end with the above argument. They alternatively argue that subject-matter jurisdiction over these adversary actions is absent because, as a matter of law, the order of December 31, 2002 was erroneously entered. The motion by certain former employees of debtor to reopen the bankruptcy case, in other words, should not have been granted.

If the order was based on § 350(b) of the Bankruptcy Code, defendants argue, said order was improper as a matter of law. Unless a bankruptcy case was closed in the first instance in accordance with § 350(a) of the Bankruptcy Code, it cannot be reopened pursuant to § 350(b). In re Lewis & Coulter, Inc., 159 B.R. 188, 191 (Bankr.W.D.Pa.1993). That is to say, Section 350(b) does not apply to a bankruptcy case which was terminated without full administration of the bankruptcy estate and without the discharge of any trustee. In re Archer, 264 B.R. 165, 168 (Bankr. E.D.Va.2001).

An order of dismissal, by contrast, terminates a bankruptcy before the bankruptcy estate is fully administered. Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Property Builders, Inc.), 699 F.2d 963, 965 (9th Cir.1982); Critical Care Support Services, Inc. v. U.S. (In re Critical Care Support Services, Inc.), 236 B.R. 137, 140–41 (E.D.N.Y.1999).

Defendants also assert that there was no basis for granting debtor's former employees relief from the order of dismissal in accordance with Federal Rule of Civil Procedure 60(b). The grounds for relief asserted by the former employees, defendants maintain, do not fall within the scope of any of the grounds for relief enumerated at Rule 60(b)(1) through (b)(6).

Defendants would have us conclude from the above considerations that, as a matter of law, the order of December 31, 2002, was erroneously entered and that said order therefore did not again bestow subject-matter jurisdiction over these adversary actions upon the court.

The assertion that we lack subject-matter jurisdiction over these adversary actions for this reason is without merit.

The order of December 31, 2002, reinstating the bankruptcy case was a final appealable order which defendants did not appeal. Only orders that dispose of all issues as to all parties ordinarily are considered final for appeal purposes in civil litigation. Professional Insurance Management Co. v. The Ohio Casualty Group of Insurance Companies (In re Professional Insurance Management Co.), 285 F.3d 268, 279 (3d Cir.2002) (citing In re Meyertech Corp., 831 F.2d 410, 414 (3d Cir.1987)).

■ Finality with respect to orders entered in a bankruptcy case, however, is construed in a more pragmatic, functional way than in the typical appeal. Id., 285 F.3d at 273 (citing In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir.1985)). Bankruptcy proceedings often are protracted and involve numerous parties with different interests. Because of this, it would be a waste of time and resources to delay judicial review of certain orders, especially if the appeal resulted in reversal or modification of the order and necessitated revisit-

ing matters previously adjudicated. *See In re White Beauty View, Inc.,* 841 F.2d 524, 526 (3d Cir.1988).[1]

■ Various factors may be considered when determining whether an order entered in a bankruptcy case is final for appeal purposes. Included among these factors are: the impact of the matter on bankruptcy assets; the preclusive effect of a decision on the merits; and judicial economy. *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.),* 844 F.2d 99, 104 (3d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

We conclude that the order of December 31, 2002, "reopening" the above bankruptcy case and converting it to a chapter 7 proceeding was final for purposes of 28 U.S.C. § 158(a)(1). The impact of the order "reopening" the bankruptcy case and the concomitant reinstatement of the above adversary actions potentially had a significant effect upon bankruptcy estate assets. Should the chapter 7 trustee prevail against one or more of the defendants under any of the causes of action set forth in the complaint, the transfer(s) at issue would be avoided and recovered "for the benefit of the estate." 11 U.S.C. § 550(a).

Judicial economy also would be served. If, as defendants assert, the order of December 31 2002, is erroneous and were reversed on appeal, the need for further proceedings in the underlying bankruptcy case, not to mention this adversary action, would be obviated.[2]

Review of the record in this bankruptcy case reveals that, with possibly two exceptions, every defendant in these adversary action and/or its counsel received notice of the hearing held on December 31, 2002, on the motion to reopen the bankruptcy case and/or received a copy of the order reopening the case which was issued and entered that same day. None of the notices or copies of the order, all of which were sent by first class mail, were returned as undeliverable. The contention by a few of the defendants in these adversary actions that they had no notice of the "reopening" of the bankruptcy case is incorrect, perhaps even disingenuous.

Those defendants who received notice, we conclude, could have filed a timely notice of appeal of the order of December 31, 2002, if they believed it was erroneously entered because neither § 350(b) of the Bankruptcy Code nor Federal Rule of Civil Procedure 60(b) provided a basis for the order. They neither filed a notice of appeal within the ten-day period prescribed in Federal Rule of Bankruptcy Procedure 8002(a) nor requested an extension of the time for doing so in accordance with Federal Rule of Bankruptcy Procedure 8002(c). The time for so doing had long since passed before these defendants filed their motions to dismiss the adversary actions against them.

As for those defendants who, for some unknown reason, may not have received notice of the hearing on December 31, 2002, or a copy of the order disposing of the motion, they did not assert in their motions to dismiss the adversary actions against them that they were not aware of the disposition. Moreover, to the extent they felt aggrieved by the order, they

---

1. This pragmatic, functional approach, it should be noted, applies only to orders entered in the underlying bankruptcy case. The concept of finality with respect to an order entered in an adversary action is the same as it is in ordinary civil litigation. *In re White Beauty View,* 841 F.2d at 526.

2. This is not to say that an order denying the motions to dismiss this adversary action is final for purposes of 28 U.S.C. § 158(a)(1). It clearly is not.

could have requested reconsideration of the order or relief from it upon learning that the bankruptcy case had been "reopened." They did not do so.

The matter does end there. It is not obvious what defendants intend to imply when they assert that the order of December 31, 2002, was entered in error because neither § 350(b) of the Bankruptcy Code nor Federal Rule of Civil Procedure 60(b) supports its entry. We take the intended implication to be that subject-matter jurisdiction over the adversary actions is lacking because we erred as a matter of law in entering the order in question, from which the reinstatement of these adversary actions flowed.

This argument is without merit.

■ To the extent that defendants mean to collaterally attack the order of December 31, 2002, and to imply that it is void, we reject this inference. An order may be void if the court entering it lacked subject-matter jurisdiction or lacked personal jurisdiction over the parties or if the order was not within the powers granted to the court by law. *Marshall v. Board of Education, Bergenfield, New Jersey*, 575 F.2d 417, 422 (3d Cir.1978). It is not void, however, merely if it was erroneously entered. *Id.* A collateral attack on a final order is not a permissible substitute for appealing it. *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir.2000). We have determined that debtors could have, but did not appeal the order to the district court to have it overturned.

Subject-matter jurisdiction over these adversary actions flows from the order of December 31, 2002, which defendants did not bother to appeal.

Defendants will not be heard at this late time to challenge the order from which subject-matter jurisdiction over these adversary actions flowed.

## II.) Statute Of Limitation.

■ Finally, defendants assert that the above adversary actions must be dismissed because they are time-barred by § 546(a) of the Bankruptcy Code, which provides in part as follows:

(a) An action or proceeding commenced under section 544,...547, [or] 548 ...of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702 ...of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546.

It is undisputed that debtor filed its chapter 11 petition on June 30, 2000, and that the order for relief was entered that same day. The second anniversary of the entry of the order for purposes of § 546(a)(1)(A) occurred on June 30, 2002.

Section 546(a)(1)(B) does not apply to this adversary action because the appointment of the chapter 7 trustee on December 31, 2002, occurred, not before, but after June 30, 2002—i.e., more than two years after entry of the order for relief.

Moreover, the second anniversary of entry of the order for relief occurred on June 30, 2002, nearly two months earlier than the dismissal of debtor's bankruptcy case on August 20, 2002.

Defendants apparently would have us infer from all of this that the above adversary actions are time-barred by § 546(a) because they were not commenced on or

before June 30, 2002, but instead were commenced on December 31, 2002, when the order "reopening" the bankruptcy case and converting it to a chapter 7 proceeding was entered. This inference is unwarranted under the facts of this case.

An adversary action is commenced by filing a complaint in this court. Federal Rule of Civil Procedure 3. The complaint in this adversary action was filed on June 28, 2002, two days prior to the second anniversary of entry of the order for relief.

It is incorrect to assert, as defendants implicitly do, that these adversary actions were not commenced before June 30, 2002. They were, we conclude, commenced on June 28, 2002, two days *before* the second anniversary of entry of the order for relief in this bankruptcy case. Defendants' position rests on the erroneous assumption that these adversary actions somehow were "commenced anew" on December 31, 2002, when the order "reopening" the bankruptcy case was entered.

We noted previously that the effect of the order of December 31, 2002, vacating the August 20, 2002, order of dismissal rendered the latter order a nullity. It was, in other words, as if the order of August 20, 2002, never existed. *Jerry,* 487 F.2d at 607. The bankruptcy case reverted to its previous status as though it had never been dismissed. *Wynne v. Rochelle,* 385 F.2d at 796.

We conclude in light of the foregoing that these adversary actions are not time-barred by § 546(a) of the Bankruptcy Code.

An order denying defendants' motions to dismiss these adversary actions shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this _____ day of *September,* 2003, in accordance with the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the motions to dismiss the above adversary actions by defendants named therein be and hereby are **DENIED.**

It is **SO ORDERED.**