

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2004

# In Re: Midstate Mtg

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2153

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Midstate Mtg " (2004). *2004 Decisions.* Paper 414.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/414

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-2153
_____

IN RE:

MIDSTATE MORTGAGE INVESTORS, INC.,

Debtor


LAWRENCE SELINGER, D.M.D.;
EMELIA SELINGER;
JOHN H. SERGEANT, M.D.;
FRANCIS GODREY, M.D.;
GEORGE BRENNAN, M.D.

v.

GERALD J. WHITEMAN, D.D.S.;
ESTATE OF THOMAS ENGLISH


Lawrence Selinger, D.M.D.,
John H. Sergeant, M.D.,
Francis Godrey, M.D.,
George Brennan, M.D.,

Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-04058)
District Judge:  Honorable Stanley R. Chesler
_____

Argued May 27, 2004

Before: SCIRICA, *Chief Judge*, FISHER and ALARCÓN,[*] *Circuit Judges*.

(Filed: August 5, 2004)

Matthew E. Moloshok
Robert B. Rosen
Hellring, Lindeman, Goldstein & Siegal
One Gateway Center, 8th Floor
Newark, NJ 07102

James A. Scarpone (Argued)
Scarpone, Staiano & Savage
744 Broad Street, Suite 1901
Newark, NJ 07102
     *Attorneys for Appellants*

David N. Ravin
Kevin McNulty
Dale E. Barney (Argued)
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102-5497
     *Attorneys for Appellee, Gerald J. Whiteman, D.D.S.*

Kevin McNulty
Dale E. Barney (Argued)
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102-5497
     *Attorneys for Appellee, Estate of Thomas English*

_____

OPINION OF THE COURT

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

2

_____

FISHER, *Circuit Judge*.

The parties are familiar with the facts, which will not be recited here in detail. Appellees Gerald J. Whiteman, D.D.S. and Thomas English had been limited partners of debtor Midstate Mortgage Investors Group, L.P. ("Midstate") and along with Midstate's general partner, had guaranteed certain debts of Midstate to appellants, the Selinger Parties.[1] Appellants filed an involuntary Chapter 11 petition against Midstate and served on the creditors' committee. The plan as confirmed ("Plan") contained language concerning releases of the appellees' guarantees and releases were signed. After the case closed, Midstate defaulted on its Plan obligations to the Selinger Parties. Appellants sued appellees in state court to enforce the guarantees and for a declaration that the Plan and releases did not bar recovery.

Whiteman and English moved before the bankruptcy court to reopen the case, enforce the terms of the Plan, and restrain appellants from pursuing the state-court lawsuit. The bankruptcy court reopened the case and denied the appellants' cross-motion for abstention. The court concluded that under the Plan as confirmed, the Selinger Parties released Whiteman and English from their guarantees. The court enjoined the Selinger

_____

[1]English is deceased and his estate is the litigant in this appeal. Although the caption lists the debtor as Midstate Mortgage Investors, Inc., the parties concur that the debtor's proper name is Midstate Mortgage Investors Group, L.P. The Selinger Parties are Lawrence Selinger, D.M.D., John H. Sergeant, M.D., Francis Godfrey, M.D., and George Brennan, M.D.

3

Parties from prosecuting the state-court action or instituting any other action that might interfere with the Plan or releases. The district court affirmed, and so will we.

Appellants argue that the bankruptcy court lacked jurisdiction to reopen the case and enforce the Plan. We disagree. "[W]here there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan . . . . retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." In re Resorts Int'l, Inc., 372 F.3d 154, 168-69 (3d Cir. 2004). That nexus existed here where the dispute focused on the content and meaning of the Plan, issues over which the bankruptcy court had properly retained jurisdiction. See In re Marcus Hook Development Park, Inc., 943 F.2d 261, 266 (3d Cir. 1991) (bankruptcy court has "undisputed" jurisdiction to enforce own order). That the case was closed did not prevent the court from reopening the case to enforce its own order. See Donaldson v. Bernstein, 104 F.3d 547, 552 (3d Cir. 1997) (bankruptcy court properly reopened closed case and asserted jurisdiction).

Nor did the bankruptcy court err in refusing to abstain. Mandatory abstention does not apply where the proceeding is "core." In re Donington, 194 B.R. 750, 757 (D.N.J. 1996). Here, the bankruptcy court considered arguments regarding Plan terms involving releases and discharges, as well as the confirmation itself, making this a core proceeding. See 28 U.S.C. § 157(b)(2)(I), (J), (L). Indeed, the proceeding to enforce the Plan is core

4

because it "could arise only in the context of a bankruptcy case." Marcus Hook, 943 F.2d at 267 (quotation marks omitted). Accordingly, mandatory abstention did not apply.[2]

Appellants next argue that the bankruptcy court misinterpreted the Plan, which provides in relevant part, "[a]ll parties [which included the limited partners and creditors] shall exchange general releases upon the effective date of the Plan, however, the releases to [the general partner] shall remain in escrow until the Plan is consummated." We agree with the bankruptcy court that the Plan's plain language is determinative. The release to the general partner could not be delivered until consummation, but nothing indicated that the releases to Whiteman and English would be similarly retained. By the Plan's natural language, the appellees' releases took effect upon confirmation. See J.B. v. M.B., 170 N.J. 9, 18-19 (2001) (fundamental canon is interpretation of plain terms) (parenthetically discussing State Troopers Fraternal Assoc. v. New Jersey, 149 N.J. 38, 47 (1997)).

The Selinger Parties next argue that the bankruptcy court lacked the authority to include the release language in the Plan and that it was amended without consent or notice. These arguments ignore the principles of finality that prevent collateral attacks once a plan is confirmed and time to appeal has expired. Absent fraud redressable under

---

[2]We lack jurisdiction to review a discretionary refusal to abstain. 28 U.S.C. § 1134(d); In re Federal-Mogul Global, Inc., 300 F.3d 368, 389 n.14 (3d Cir. 2002), cert. denied sub nom. DaimlerChrysler Corp. v. Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003).

bankruptcy law, a confirmed plan cannot be collaterally challenged, even for failure to comply with the Code. See In re Szostek, 886 F.2d 1405, 1413-14 (3d Cir. 1989).

Here, appellants did not appeal from confirmation and did not seek revocation for fraud within 180 days as required by 11 U.S.C. § 1144. "Expiration of the limitations period bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed." In re Orange Tree Assoc., Ltd., 961 F.2d 1445, 1447 (9th Cir. 1992); see also In re Fesq, 153 F.3d 113, 115 (3d Cir. 1998).[3] Accordingly, it is now too late for appellants to seek revocation of the Plan.[4]

We have considered the appellants' remaining arguments and find them to be without merit. Accordingly, the judgment of the district court will be AFFIRMED.

---

[3]Indeed, appellants – who were on the creditors' committee – did not attend the confirmation hearing and knew of the changes to the Plan prior to expiration of the 180-day period. Despite this knowledge, they did not timely challenge the Plan. "[I]f a creditor ignores the bankruptcy proceedings, he does so at his peril." Szostek, 886 F.2d at 1410 (citing Matter of Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983)).

[4]For example, appellants suggest that they may attack the Plan under Fed. R. Civ. P. 60(b). This argument ignores the fact that the Bankruptcy Rules plainly state that in the Rule 60 context, "a complaint to revoke an order confirming a plan may be filed only within the time allowed by [11 U.S.C.] § 1144." Fed. R. Bank. P. 9024. As the period under Section 1144 has long since passed, Rule 60 does not apply.

Along similar lines, appellants make a number of contract-related arguments to attack the Plan. They ask us to look to the releases and other parol evidence, but the releases are silent regarding their timing, and parol evidence does not alter the Plan's plain meaning. We similarly reject the suggestion that the Plan was void for a lack of consideration. Appellees agreed to help fund the Plan by discharging a mortgage in their favor secured by the general partner's residence, which is obvious consideration.

6